# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

DEMARIO DONTEZ WALKER                                        PLAINTIFF

v.                                                  No. 4:18CV48-GHD-DAS

MARSHALL TURNER, ET AL.                                     DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Demario Dontez Walker, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. After a review of the plaintiff's extensive history of frivolous, malicious, and vexatious litigation, the court ordered the plaintiff to show cause why the instant case should not be dismissed – and why the court should not require him to provide documentary proof to support his allegations in future cases. The plaintiff has responded to the court's show-cause order, and the matter is ripe for resolution. For the reasons set forth below, the instant case will be dismissed as vexatious, and Mr. Walker will be required to present documentary proof of allegations he makes in future cases.

## The Court's Show-Cause Order

The court issued a lengthy show-cause order detailing Mr. Walker's extensive history of frivolous, meritless, vexatious litigation. In the interest of flow and ease of reference, the court will restate that history in the instant opinion, largely unchanged.

## Mr. Walker's Long History of Meritless and Vexatious Filings

In 2009 – a decade ago – the Fifth Circuit Court of Appeals noted that Mr. Walker had "struck out" under the "three strikes" provision of the Prison Litigation Reform Act, stating "Walker has already been informed that he has accumulated three strikes under 28 U.S.C. § 1915(g)." *Walker v. Mississippi Parole Bd.*, 333 F. App'x 843, 845 (5th Cir. 2009) (citing *Walker v. Norwood*, No. 3:08-cv-275-TSL-JCS, 2009 WL 387337, at *1 (S.D. Miss. Feb.13, 2009)). Mr. Walker has been at least as burdensome to state courts, as the Mississippi Court of Appeals contemplated sanctioning him "for his repetitive, frivolous findings" but declined to do so "at [that] time." *Walker v. State*, 35 So.3d 555, 560 (¶ 21) (Miss. Ct. App. 2010). Indeed, Mr. Walker had "filed over forty non-*habeas* lawsuits for perceived mistreatment while incarcerated." *Walker v. Allen*, 119 So.3d 1111, 1112 (¶ 1) (Miss. Ct. App. 2013). As an example of the content of Mr. Walker's claims may be found in *Walker v. United States*, No. 08-CV-3025(ENV), 2008 WL 3851589 (E.D.N.Y. Aug. 18, 2008), which was dismissed as frivolous because Walker falsely alleged that he had traveled to New York in 2007, despite having been incarcerated in Mississippi since 2003.

Undeterred by the sanctions warnings in state and federal court – and "striking out" – Mr. Walker has continued his paper onslaught against various defendants and courts. According to the website of the Mississippi Supreme Court, Mr. Walker has pursued some 58 appeals of adverse decisions in state court.

As our sister court in the Southern District of Mississippi has noted:

> [Walker] should be keenly aware of the necessity of pleading *facts*. In this district alone he has filed almost fifty § 1983 lawsuits, and he has accumulated nine strikes.

*Walker v. Hollaway*, No. 1:17CV244-LG-RHW, 2018 WL 7283267, at *2 (S.D. Miss. Nov. 7, 2018), *report and recommendation adopted sub nom. Walker v. Holloway*, No. 1:17CV244-LG-RHW, 2019

WL 507490 (S.D. Miss. Feb. 8, 2019).[1] In that case, Mr. Walker made many of the same allegations as in the present one, leveling those allegations against some of the same defendants and some different ones:

> On September 7, 2017,[1] while incarcerated at South Mississippi Correctional Institution (SMCI), Demario Walker filed this lawsuit complaining that on August 22, 2017 he was "administratively reclassified to the highest security level in MDOC (C-custody)," and moved to Unit 9, which he describes as "a unit ran and operated by gang members." He claims he is being "forced back into sexual slavery since August 22, 2017.

> Without elaboration, Walker alleges that all actions taken against him were in retaliation for his having filed an earlier case (Civil Action No. 1:17cv27-RHW) against SMCI officers. Walker states he was reclassified due to receiving six Rules Violation Reports (RVRs) in six months, two major rule violations and four serious ones, which resulted in his accumulating points to change him to C-custody and housing in a Special Treatment Unit (STU). Walker alleges the RVRs were false and resulted from retaliation. Named as defendants in the original complaint lawsuit were Case Manager Chasity Blakley, who performed the reclassification; Associate Warden Angie Hollaway, who approved the reclassification and Walker's transfer to Unit 9; Assistant Director of Offender Services Jarita Bivens, who approved his transfer to Unit 9; Officer Jamario Clark, who allegedly is a gang member and sexually assaulted Walker over a dozen times between February 22, 2016 and March 10, 2017, and put out a "statewide hit" on Walker; MDOC Commissioner Pelicia Hall and SMCI Superintendent Jacqualine (*sic*) Banks, who allegedly ordered campaigns of harassment, retaliation and terror against Walker; and Officer Marcus Nelson who also allegedly sexually assaulted Walker.[2] A September 29, 2017 motion to amend the complaint resulted in the addition of two more Defendants, Pamela Robinson the Director of Offender Services/Classification and Ronald King, the Superintendent at Central Mississippi Correctional Facility (CMCF).[3] Robinson allegedly approved Walker's classification and transfer to CMCF "disregarding the risk to [his] health and or safety," and King allegedly housed him with violent offenders, gave him an upper bunk when he was medically restricted to a lower one, and failed to provide him with hygiene, clothing, mail, recreation, showers, cleaning supplies, legal and writing material. [6]

> *2 The relief Walker requested in his complaint was an injunction prohibiting retaliation, prohibiting his being housed in Units 7, 8, 9, and 11 at SMCI, or at CMCF, the Mississippi State Penitentiary (MSP), SMCI Area 3 or SMCI Units A1 through

---

[1] He has now filed fifty-five civil rights cases in federal court – and approximately 19 *habeas corpus* petitions, six cases of other types, and 21 appeals.

C2,[4] restoration to B-custody and return to Unit 10 housing, restoration of his job at the prison, $500,000 punitive damages and $100,000 compensatory damages. [1, p. 4]

...

FN. 4. Walker contends that he cannot be safely housed in any Mississippi penal institution.

*Id.*

Mr. Walker's present claims are nearly identical to those set forth above (though some of the defendants are different). He was released from incarceration in July 2018, though he was reincarcerated several weeks later. *Id.* As in the present case, Mr. Walker alleges in *Hollaway* that he attempted to exhaust MDOC's grievance process, but no one ever responded to his grievances. In response to the defendants' motion for summary judgment in *Hollaway,* Mr. Walker stated that he did not oppose the motion, except as to defendant Jamario Clark. As a result, the Magistrate Judge recommended dismissing all defendants except Clark and all claims except those involving Clark. Then Walker objected to the Magistrate Judge's Report and Recommendation, stating that he had changed his mind and would like to proceed against all defendants. As a result, the patient District Judge in *Hollaway* declined to adopt the Report and Recommendation and reset the plaintiff's response deadline. Again, the plaintiff's chaotic actions in his lawsuit led to the wasting of the Magistrate Judge's time and effort in drafting the Report and Recommendation, as well as the defendants' time in reviewing additional documents – which extends the time it takes to resolve the case – which wastes the time of everyone involved, including the staff of counsel for the defendants and the Clerk's Office staff.

Mr. Walker's pattern of filing innumerable cases and a flurry of documents in each case has continued unabated for years. *See Walker v. State of Mississippi,* et al., No. 3:04–cv–140–LN (S.D. Miss. July 25, 2006) (dismissed for failure to state a claim); *Walker v. Jackson, et al.,* No. 5:08–cv–

221–DCB–MTP (S.D. Miss. July 14, 2008) (dismissed as malicious); *Walker v. San Diego County Clerks, et al.,* No. 3:08–cv–1504–JLS–NLS (S.D. Cal. Nov. 25, 2008) (dismissed as frivolous); *Walker v. United States of America, et al.,* No. 3:08–cv–1314–JAH–LSP (S.D. Cal. Dec. 3, 2008) (dismissed for failure to state a claim); *Walker v. Landcasta,* et al., No. 2:08-cv-161-KS-MTP (S.D. Miss. Aug. 5, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 16; *Walker, et al. v. Epps,* et al., No. 2:08-cv-194-KS-MTP (S.D. Miss. Sept. 3, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 21; *Walker v. Cole,* et al., No. 2:08-cv-217-KS-MTP (S.D. Miss. Sept. 30, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 10; *Walker v. Woodard,* et al., No. 2:08-cv-233-KS-MTP (S.D. Miss. Oct. 27, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 15; *Walker v. King,* et al., No. 3:08-cv-459-TSL-JCS (S.D. Miss. July 25, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 9; *Walker v. Magee,* et al., No. 2:08-cv-235-KS-MTP (S.D. Miss. Oct. 28, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 15; *Walker v. McCullum,* et al., No. 3:08-cv-452-DPJ-JCS (S.D. Miss. July 22, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 12; *Walker v. Clark,* et al., No. 3:08-cv-647-WHB-LRA (S.D. Miss. Oct. 21. 30, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 8; *Walker v. Walker,* et al., No. 5:09-cv-13-DCB-MTP (S.D. Miss. Feb. 9, 2009), Order denying IFP status and dismissing case at CM/ECF Doc. No. 5; *Walker v. Cole,* et al., No. 2:08-cv-217-KS-MTP (S.D. Miss. Sept. 30, 2008), Order denying IFP status and dismissing case at CM/ECF Doc. No. 10; *Walker v. Caskey,* et al., No. 4:09-cv-120-HTW-LRA (S.D. Miss. Sept. 14, 2009), stipulation of dismissal at CM/ECF Doc. No. 3; *Walker v. Epps,* et al., No. 2:09-cv-128-KS-MTP (S.D. Miss. July 14, 2009), voluntary dismissal at CM/ECF Doc. No. 18; *Walker v. McCleod,* et al., No. 3:09-cv-699-HTW-LRA (S.D. Miss. Nov. 20, 2009), Order denying IFP status and dismissing case at CM/ECF Doc. No. 3; *Walker v. Delaine,* et al., No. 4:09-cv-127-TSL-

LRA (S.D. Miss. Sept. 25, 2009), Order denying IFP status and dismissing case at CM/ECF Doc. No. 9; *Walker v. Cox*, et al., No. 4:10-cv-201-HTW-LRA (S.D. Miss. Dec. 1, 2010), Order denying IFP status and dismissing case at CM/ECF Doc. No. 3; *Walker v. Lewis*, et al., No. 3:12-cv-364-HTW-LRA (S.D. Miss. May 29, 2012), Order splitting case at CM/ECF Doc. No. 4; *Walker v. Lewis*, et al., No. 3:12-cv-441-CWR-LRA (S.D. Miss. June 29, 2012), Order denying IFP status and setting payment schedule at CM/ECF Doc. No. 5; *Walker v. Lewis*, et al., No. 3:12-cv-650-CWR-LRA (S.D. Miss. Sept. 18, 2012), Judgment of Dismissal (restricted) at CM/ECF Doc. No. 6; *Walker v. Banks*, et al., No. 3:17-cv-995-CWR-FKB (S.D. Miss. Dec. 11, 2017), Final Judgment and issued second sanction warning at CM/ECF Doc. No. 10; *Walker v. Holloway*, et al., No. 1:17-cv-283-LG-RHW (S.D. Miss. Oct. 10, 2017), dismissed and allowed to proceed in different case at CM/ECF Doc. No. 5.

As mentioned briefly above, Mr. Walker has not limited his litigation to Mississippi, even though he was incarcerated here when he filed suits in other states. *See, e.g.*: *Walker v. United States*, No. 08-5836-pr (2d Cir. Apr. 17, 2009); *Walker v. Cir. Ct. Clerk*, No. 9-624-B-S, 2010 U.S. Dist. LEXIS 915 (D. Me. Jan. 25, 2010); *Walker v. United States*, No. 3:08cv1314-JAH-LSP (S.D. Cal. Dec. 3, 2008); *Walker v. San Diego Cnty. Clerks*, No. 3:08cv1504-JLS-NLS (S.D. Cal. Nov. 25, 2008); *Walker v. United States*, No. 08cv3025-ENV-LB (E.D.N.Y. Aug. 18, 2008).

Mr. Walker has established a consistent pattern after filing his many meritless suits: he files motions and pleadings at a blistering pace, overwhelming both the defendants and the courts in a frenzy of largely meritless filings. One case, filed in February 2017, already contains 412 docket entries, the vast majority of which are documents Mr. Walker himself filed. *See Walker v. Hunt, et al.*, No. 1:17-cv-027-RHW (S.D. Miss. February 1, 2017). The present case, filed in February 2018, already has 101 docket entries – most of which Mr. Walker generated. He seems to file documents at a faster pace in response to filings by either the defendants or the court. Indeed, the Clerk's Office

recently docketed eight of Mr. Walker's motions in a single day. Many of his filings are frivolous, such as his motion [55] for a three-judge panel, various motions to add claims accruing after the case was filed, a motion [86] to produce personnel records of defendants, etc. Other papers, though not rising to the level of frivolous, were nonetheless meritless. It appears that Mr. Walker becomes frustrated with his housing location, the staff employed there, or some other aspect of his incarceration, then files suit to express his displeasure. In any event, these motions and other submissions waste the time and effort of the defendants and the court.

In the present case, Mr. Walker has, yet again, filed suit in federal court, seeking redress for alleged violations of his constitutional rights while incarcerated within the Mississippi Department of Corrections. He has, again, filed documents at a rapid and accelerating pace. He has "struck out" under the Prison Litigation Reform Act and seeks nonetheless to proceed as a pauper under the "imminent danger" exception of 28 U.S.C. § 1915(g). Until the defendants made it clear, the court did not recognize the magnitude and scope of Mr. Walker's frivolous, meritless, and vexatious filings over the course of many years. They are legion and – coupled with the recognizable pattern of accelerating filings in this case – have finally garnered the court's attention. In seeking to limit the pace of Mr. Walker's filings, as well as improve their quality, the court need not rely solely upon the three strikes provision of 28 U.S.C. § 1915 but may also look to the law of sanctions.

### Sanctions

The "three strikes" provision of the Prison Litigation Reform Act has been insufficient in deterring Mr. Walker from filing meritless cases; hence, the court will look to the law of sanctions to achieve that goal. The court may award sanctions under its inherent power for abuse of the judicial process only after finding that the litigant has acted in bad faith. *Roadway Express v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Sanctions may only be imposed under the

-7-

court's inherent power after the person being sanctioned has had adequate notice and a meaningful opportunity to be heard. *Persyn v. United States*, 135 F.3d 773 (Fed. Cir. 1997). The court has the power to police its docket in situations like the present one, where a litigant files numerous outrageous and meritless pleadings or otherwise disrupts the orderly administration of the docket. *Landis v. North American Co.*, 299 U.S. 248 (1936), *Marinechance Shipping v. Sebastian*, 143 F.3d 216 (5th Cir 1998), *U.S. Abatement v. Mobil*, 39 F3d 556 (5th Cir 1993). The Supreme Court acknowledges the need for the inherent power sanction when sanctions are clearly appropriate. *Id.* A district judge may use the inherent power of the court to fashion nearly any sanction he deems appropriate to the circumstances; however, the court should choose the least severe sanction adequate to deter sanctionable conduct in the future. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988).

The court's inherent power to impose sanctions must be used with restraint and caution because of its potency and the limited control of its exercise; the power may be exercised only if essential to preserve the authority of the court, and the sanction chosen must employ the least possible power adequate to the end proposed. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 231, 5 L.Ed. 242 (1821), *quoted in Spallone v. United States*, 493 U.S. 265, 280, 110 S.Ct. 625, 635, 107 L.Ed.2d 644 (1990); *see also Roadway Express, supra.* When a party receives an appropriate opportunity to be heard, he may be sanctioned for abuse of the judicial process occurring beyond the courtroom. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The fact that a court initiates sanctions against a party *sua sponte* does not indicate that the court is biased against that party. *Lemaster v. United States*, 891 F.2d 115 (6th Cir. 1989). The inherent power of the court emanates from the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115

- 8 -

L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

Over a period of many years, Mr. Walker has filed scores of lawsuits – making disturbing and outrageous allegations without a shred of evidence to support them. Indeed, Mr. Walker has repeatedly alleged that his prison grievances have gone completely unanswered – which, conveniently, obviates the need for him to provide documentary proof that he has even exhausted his administrative remedies – a requirement before proceeding with a *pro se* prisoner case under 42 U.S.C. § 1983.

The rules of court have made it easy for Mr. Walker to churn forward with his meritless cases. Courts have found that at least *nine* of his suits count as "strikes" under the PLRA – which means they were utterly meritless. Many others have been dismissed because Mr. Walker had "struck out," was thus prohibited from proceeding as a pauper, and could not pay the filing fee. Later, Mr. Walker began making allegations that he was "under imminent danger of serious physical injury," thus circumventing the PLRA's "three strikes" provision and permitting him to proceed as a pauper, despite having "struck out." *See* 28 U.S.C. § 1915(g). Once those cases moved forward, however, it does not appear that Mr. Walker then offered proof that he faced such danger.

### Mr. Walker's Response to the Court's Show-Cause Order

In his response to the court's show-cause order, Mr. Walker did not provide the documentary proof of his claims that the court required. Indeed, as has been the case in essentially all of his scores of suits, he did not provide documentary proof to support any of his allegations. Instead, he argues: (1) that under the Prison Litigation Reform Act he is not required to do so at this stage of litigation; (2) that he may circumvent the "three strikes" provision of the Prison Litigation Reform Act by merely alleging that he is "under imminent danger of serious physical injury;" (3) that none of his previous

- 9 -

suits have been dismissed as "vexatious," and thus his suits were not vexatious; (4) that he should not be required to have a "mini-trial" in order to move forward with a lawsuit; and (5) that the court has merely accepted what the defendants have alleged in their motion for judgment on the pleadings.

Mr. Walker also specifically challenges the court's statement that he could not have been in New York during the time he alleged in the suit he initiated there because he was incarcerated with the Mississippi Department of Corrections at the time. Walker alleges that, during that time, he had been released on parole. However, the United States District Court for the Eastern District of New York held that:

> Walker's "factual contentions are clearly baseless" as he could not have traveled to New York from Texas in November 2007, if he was incarcerated in Mississippi at the time. Accordingly, the complaint is dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b).

*Walker v. United States*, No. 08-CV-3025(ENV)(LB), 2008 WL 3851589, at *1 (E.D.N.Y. Aug. 18, 2008). The Eastern District of New York denied Mr. Walker's request to proceed as a pauper, holding that any such appeal would be in bad faith. *Id.* It appears that Mr. Walker did not appeal this ruling. The court finds that Eastern District of New York's ruling is *res judicata* on the issue of Walker's location during the time relevant to his allegations in that case.

### Walker's Reliance on the "Three Strikes" Provision of the PLRA Is Misplaced

To the extent that Mr. Walker relies upon the requirements of the "three strikes" provision of the Prison Litigation Reform Act, the court has not rested its ruling in this case on that statute. As set forth in the court's Show-Cause Order, the court relies, instead, upon the law of sanctions, which is entirely separate from PLRA.

### The Pattern of Walker's Filings Supports a Finding of Vexatiousness

- 10 -

Mr. Walker's argument that his previous suits were not "vexatious" because none of the previous courts used that term is equally unavailing. "Vexatious" means: "without reasonable or probable cause or excuse; harassing; annoying." *Black's Law Dictionary*, 1701 (9th ed. 2009). "Frivolous" means "lacking a legal basis or legal merit; not serious; not reasonably purposeful." *Id.* at 739. The distinction between vexatious and frivolous is that vexatious suggests an intention to harass, whereas for a purpose to be frivolous, the defendant does not need to show an improper motive. *United States v. Monson,* 636 F.3d 435, 439 (8th Cir.2011).

Under these definitions, if Mr. Walker had filed only one or two such suits, then the court could find that the suits were merely frivolous – and simply warn him to bring his filings into the proper bounds. However, he has filed over 100 such suits, making similar baseless allegations over and over – scores of times. The court has not considered Walker's filings in isolation; instead, the court has taken into account his dogged insistence on repeating the same or similar meritless claims, despite the many dismissals as frivolous – and despite "striking out" nine times. As set forth above, other courts have rebuked Mr. Walker for this type of filing. *See Walker v. Hollaway, supra.* The court has also considered Mr. Walker's tendency to accelerate his filings whenever the court or a defendant files a document in the case – and the fact that Mr. Walker rarely offers more than his bare allegations to support his claims. This pattern of litigation supports the finding that the present case (and most of the others) have been filed vexatiously. However, even if the filings were merely frivolous, the sheer number of cases and the myriad filings within those cases would warrant a sanction to bring Mr. Walker's filings to a reasonable number – and to limit those filings to those which can be supported by documentary proof.

### The Sanctions Order Will Not Require a "Mini-Trial"

The plaintiff's suggestion that the court's requirement of a modicum of proof is the equivalent "mini-trial" on the merits of his claims. His fears are unfounded. The court will not require definitive proof of each allegation, merely *some* proof that the events he has described may actually have occurred. For example, if Mr. Walker alleges in the future that he was attacked and beaten by other inmates, then contemporaneous medical records showing injuries consistent with a beating would be sufficient for the case to move forward as to that claim, even though mere medical records would not be enough to make a prima facie case on a claim of failure to protect him against the attack of other inmates. This argument is thus without merit.

### The Court Has Reviewed Mr. Walker's Voluminous History of Meritless Cases, Rather Than Merely Relying Upon the Defendants' Assertions

Finally, Mr. Walker argues that the court has merely accepted the defendants' allegations regarding his extensive history of filing meritless cases. He is mistaken. Instead, the court has verified that Mr. Walker filed the cases and has reviewed many (but not all) to determine the nature of the dispositive rulings against him. The court also relied upon the prior rulings of other courts regarding the number and nature of his previous suits. The two avenues of review have provided the court with a clear picture of the nature of Mr. Walker's filings. This argument is also without merit.

### Course of Action

On one hand, this court cannot permit a litigant to repeatedly flout the rules regarding honest pleading, and the plaintiff has clearly done so for years. On the other hand, Mr. Walker frequently makes allegations that he has been sexually assaulted or that he faces threats and attacks from gang members or others. It does not appear that Mr. Walker has offered any proof of such attacks, other

than his bare allegations. The seriousness of such allegations, however, militates against an absolute bar to his filing suit in the future.

Mr. Walker is also mentally ill, which likely explains in part both the pace and nature of his filings, as well as the leniency courts have extended to him over the years. This court must, however, put in place a mechanism to stem the tide of paper Mr. Walker unleashes each time he files suit. To this end, the court will attempt to limit Mr. Walker's filings to those claims for which he can offer a modicum of documentary proof.

Mr. Walker suggests that the court makes light of his allegations of imminent danger and serial sexual assault. He is mistaken; the court takes such allegations seriously. However, Mr. Walker has abused the judicial system so often and to such a degree that the court must impose a filter, of sorts, to separate the wheat from the chaff. The court is not requiring Mr. Walker to prove his case before he may file it; instead, the court is requiring Mr. Walker to provide some documentary evidence (above his bare allegation) to show that the suit he brings may have merit.

For example, every prison has a Coordinator as required by the Prison Rape Elimination Act, whose job is to investigate, document, and take action regarding sexual assaults in the prison. *See* Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. § 15601 et seq. An inmate alleging sexual assault may make a report to the PREA Coordinator. An investigation ensues, and the Coordinator collects evidence, if any, to document whether an attack occurred. *Id.* If none exists, then the matter is closed. If evidence supports the allegation, then supervisors ensure that all inmates or staff found guilty of committing sexual assault are disciplined according to agency procedures and referred for prosecution. Thus, if Mr. Walker has been sexually assaulted, then he should be able to document an assault through the PREA Coordinator. In addition, he could also seek medical attention and inform medical about the assault. Medical staff are required to document sexual assault allegations.

Similarly, if Mr. Walker alleges that he is not receiving adequate medical care, then he may submit a copy of the relevant portions of his medical record for review. The court has seen cases in which an inmate alleges that he received *no* medical care, while his medical record reveals that he has been treated literally hundreds of times, up to and including surgery. *Chandler v. Wexford Health*, 4:15CV102-DMB-DAS (Memorandum Opinion and Final Judgment of September 28, 2018). Often, a review of medical records can give the court a good idea of the potential merits of such claims. Given Mr. Walker's lengthy history of meritless litigation, this requirement appears to be the least burdensome way for the court to limit him to potentially meritorious filings, while preserving his ability to seek redress in this court.

## Conclusion

For the reasons set forth above, the instant case will be dismissed as vexatious. In addition, before Demario Dontez Walker may file suit in this court in the future, for each allegation, he must provide some documentary evidence tending to show that the events alleged actually occurred. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this, the _1_ day of ~~March,~~ April, 2019.

_____
SENIOR JUDGE